OPINION
{¶ 1} Defendant-appellant, James E. Harris, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of murder, with specification; improperly discharging a firearm at or into a habitation or in a school safety zone, with specification; and having a weapon while under disability. For the following reasons, we affirm the judgment of the trial court.
 {¶ 2} On March 31, 2003, defendant was indicted on one count of aggravated murder, with specification, in violation of R.C. 2903.01; one count of improperly discharging a firearm at or into a habitation or in a school safety zone, with specification, in violation of R.C. 2923.161; one count of tampering with evidence, with specification, in violation of R.C. 2921.12; and one count of having a weapon under disability, in violation of R.C. 2923.13.
 {¶ 3} On April 2, 2003, defendant entered a plea of not guilty. On February 3, 2004, defendant waived his right to a jury trial as to the charge of having a weapon under disability, which was count four in the indictment. The case proceeded to a jury trial as to counts one, two, and three.
 {¶ 4} The evidence at trial indicated the following facts relevant to this appeal. On March 21, 2003, the Columbus Police Department responded to a call reporting a shooting at 796 Canonby Place, in Columbus, Ohio. When officers arrived at around 6 p.m., they were directed to Apartment 1C. The entrance to the apartment was described as being half a staircase below ground level. Officer Charles Radich had to kick in the door because it was locked. With weapons drawn, the officers performed a tactical search of the apartment. They discovered the body of the homicide victim, Laura Thomas. The officers secured the scene. No one else was in the apartment. The glass in the rear window of the apartment was broken and appeared as though it had been penetrated by a gunshot.
 {¶ 5} Multiple witnesses testified regarding the circumstances leading to the identification of a suspect and the arrest of defendant. Officer Radich was asked at trial, "[d]id you ever at any time hear yourself who the suspect might be?" (Tr. 199.) He answered, "Yes, they come across our radio. That's the individual known as Speedy, streetname * * *." (Tr. 199-200.) Officer Radich was also asked, "When you heard the name Speedy come over the radio, what was your first thought?" (Tr. 200.) He answered, "It was [Officer] Paul sat there and looked over and said, That's James Harris." Id. The prosecutor then asked, "How did you know that?" Id. Officer Radich answered, "We have had prior encounters with Mr. Harris." Id.
 {¶ 6} Officer Mark Paul, of the Columbus Police Department, testified regarding whether he heard any information regarding a suspect. Officer Paul testified that "[i]t came across the air that the suspect, the shooter was Speedy, who I knew as James Harris." (Tr. 206.) Officer Paul recalled having had contact with Mr. Harris "[o]n several occasions, I knew him from being down at the South Park Apartments." Id.
 {¶ 7} Officer Douglas Wilkinson, of the Columbus Police Department, was also questioned at trial as to whether, at any point, he obtained information about a suspect. Officer Wilkinson testified that he heard an officer on the radio indicating that the suspect was named "Speedy," and the officer wondered if anyone knew who had that street name. Officer Wilkinson responded on the radio that he knew the name from "[p]rior contact with the defendant." (Tr. 213.) He also informed his supervisor at the time that he knew where the suspect "hangs out." (Tr. 213.) Officer Wilkinson testified that Speedy's real name is James Harris. At trial, Officer Wilkinson identified defendant as Speedy.
 {¶ 8} After learning the identity of the suspect, Officer Wilkinson proceeded from the scene of the homicide to where he thought defendant might be found, and he was advised by someone to look into a courtyard area. Officer Wilkinson saw defendant in the courtyard and arrested him. The location of the arrest was approximately 100 yards from where the victim's body was found. Columbus Police Officer Lisa Moody testified that at the time of the arrest defendant had a "strong odor of alcohol." (Tr. 294.) Defendant was taken to police headquarters to be interviewed by detectives. After the interview, Officer Moody escorted defendant to the "ID room." (Tr. 295.) As they proceeded to the ID room, defendant asked Officer Moody what he was being charged with, and she informed him that he was being charged with murder. According to Officer Moody, defendant's response was "Oh, she died." (Tr. 296.)
 {¶ 9} Arthur Wynn, who lived in the same apartment building as Ms. Thomas, testified that he was in his apartment on March 21, 2003, when he heard a gun go off. Mr. Wynn went outside his apartment to see what was happening, and he saw "a whole lot of Somalians" pointing at Speedy. (Tr. 338.) Mr. Wynn saw defendant outside Ms. Thomas's back door. According to Mr. Wynn, defendant was about eight to 15 feet from the windows of her apartment, and it "looked like he had a gun." (Tr. 339.) A couple hours before the shooting, Mr. Wynn had seen defendant with a shotgun.
 {¶ 10} At trial, Shirley Davis recalled telling detectives that, on the day of the homicide, defendant knocked on her door, and when she opened it he walked past her. Defendant was carrying a shotgun. Ms. Davis identified defendant's nickname as being Speedy. Ms. Davis was asked at trial why she did not want to appear in court and the following colloquy occurred:
A: Because Speedy is a repeat offender.
[Defense counsel]: Objection, your Honor.
The Court: Sustained. Ask the jury to disregard that. That is not something —
A: Because I was scared he was going to come back.
[Prosecutor]: Don't answer the question.
The Court: Can't talk. Please disregard those comments, because they are, obviously, prejudicial, and you can't consider that.
[Prosecutor]: I'm sorry. I have no further questions.
[Ms. Davis]: Can I ask a question?
[Defense counsel]: No.
[Prosecutor]: Your Honor, I think the witness had a question.
[Defense counsel]: I think she had —
[Ms. Davis]: I had a question. Am I the only one that is talking? Am I —
[Prosecutor]: Woe, I don't think we want to go through this question with the jury here.
The Court: Hold on a second. Let's do this. Let's take a short break while I get this straightened out.
[Ms. Davis]: I don't have a clue about what is going on.
(Tr. 229-230.) A discussion was held outside the presence and hearing of the jury. The court asked whether additional curative instructions were necessary, and defense counsel stated that he did not want to "make a bigger issue out of it than we have to right now." (Tr. 233.)
 {¶ 11} Subsequently, on the next day of trial, defense counsel moved for a mistrial on the basis that Ms. Davis had stated that defendant had multiple offenses, arguing that the curative instruction would not overcome prejudice resulting from the statement. The court overruled the motion, noting it would give a stronger curative instruction. The court subsequently re-instructed the jury that Ms. Davis's statement regarding defendant being a repeat offender was to be disregarded. The court proceeded to question each of the 12 jurors, as well as the two alternate jurors, as to whether, notwithstanding the court's instruction, he or she felt that his or her judgment in the case would be appreciably impaired by the "repeat offender" statement. Each juror responded in the negative.
 {¶ 12} Dr. Patrick Fardal, a county coroner, testified regarding the cause of Laura Thomas's death. He testified that Ms. Thomas died from a gunshot wound to her trunk. She suffered massive injury to her internal structures, including her heart. The majority of the pellets entered Ms. Thomas's body through the chest cavity through the thoracic cage. According to Dr. Fardal, the pellets traveled from her front side to her back side, from her right side to her left side, and in a slight downward direction. Dr. Fardal testified that the distance from the muzzle of the gun to her body was "probably less than five to eight feet," considering he found the "power piston"[1] in her body (Tr. 367.)
 {¶ 13} Defendant was found guilty of the following offenses: murder, with specification, being a lesser included offense of count one of the indictment, a violation of R.C. 2903.02; improperly discharging a firearm at or into a habitation or in a school safety zone, with specification, a violation of R.C. 2923.161; and having a weapon while under disability, a violation of R.C. 2923.13. Count three was dismissed pursuant to Crim.R. 29 at the conclusion of the state's case. The trial court duly sentenced defendant to a total of 25 years to life in prison, with 420 days of credit for time served.
 {¶ 14} Defendant timely appeals and has asserted the following four assignments of error:
I. The trial court committed plain error when it improperly allowedinto evidence hearsay testimony.
 II. The trial court committed prejudicial error when it improperlyallowed into evidence statements concerning the appellant's priorcriminal history.
 III. Appellant was denied the effective assistance of counsel.
 IV. The cumulative errors during trial deprived appellant of his rightto a fair trial.
 {¶ 15} Under his first assignment of error, defendant argues that the trial court committed plain error in permitting hearsay testimony regarding conversations between police officers. Defendant specifically alleges three instances in which evidence was erroneously allowed regarding radio conversations between police officers. Defendant cites to the testimony of Officers Radich, Paul, and Wilkinson, regarding statements that were made over the police radio. Defendant contends that the statements were "offered by the state to prove the truth of the matter asserted . . . that James Harris was Speedy, and that Speedy was the shooter." (Defendant's brief, at 11.)
 {¶ 16} The state argues that it was not error for the trial court to admit into evidence the testimony regarding the statements made on a police radio broadcast identifying the suspect by name, and that even if it was error, it was harmless error. Defendant recognizes that defense counsel did not object to this evidence at trial, and, therefore, has waived all but plain error.
 {¶ 17} Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. Crim.R. 52(B). Under this rule, a reviewing court must find three things in order to correct an error that was not properly objected to at trial. First, there must be an error. Second, the error must be an obvious defect in the trial proceedings. Third, the error must have affected substantial rights; that is, the trial court's error must have affected the outcome of the trial. State v. Barnes (2002), 94 Ohio St.3d 21, 27. Stated differently, the defendant must show that "but for the error, the outcome of the trial clearly would have been otherwise." State v. Long
(1978), 53 Ohio St.2d 91, 97.
 {¶ 18} Regarding plain errors, the Supreme Court of Ohio has provided this additional instruction:
Even if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court "may" notice plain forfeited errors; a court is not obliged to correct them. We have acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error" with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." * * *
Barnes, at 27.
 {¶ 19} Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 802 provides:
Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio.
 {¶ 20} "Where an out-of-court statement is offered without reference to its truth, the statement is not hearsay. Furthermore, statements which are offered to explain a police officer's conduct while investigating the crime are not hearsay." State v. Payne, Franklin App. No. 02AP-723, 2003-Ohio-4891, at ¶ 63, citing both State v. Lewis (1970),22 Ohio St.2d 125, and State v. Blevins (1987), 36 Ohio App.3d 147.
 {¶ 21} Here, when the police arrived at the scene of the shooting, they secured the scene and took steps to apprehend the suspected shooter. The name of the suspect in the shooting, Speedy, was aired over the police radio. Officer Wilkinson knew that Speedy was the street name of defendant. He informed his supervisor that he knew where defendant would likely be found. Thereafter, Officer Wilkinson and other police officers proceeded to that location. On their way, their attention was directed to a courtyard area, where defendant was standing with another person. The police arrested defendant at that point in time. The testimony of the officers explained the officers' conduct in investigating the homicide and their arrest of defendant, aka Speedy.
 {¶ 22} Because we find no error in the admission of the testimony of the police officers regarding the statements made over the police radio, we overrule defendant's first assignment of error.
 {¶ 23} Defendant argues in his second assignment of error that the trial court committed prejudicial error in allowing into evidence testimony regarding crimes, wrongs, or acts, in violation of Evid.R. 404(B), which provides as follows:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 {¶ 24} Under this assignment of error, defendant cites to three alleged errors regarding the admission of evidence. First, defendant cites to the testimony of Officer Wilkinson regarding the identity of Speedy. In his testimony, Officer Wilkinson stated that he knew defendant's street name to be Speedy from "[p]rior contact with the defendant." (Tr. 213.) Officer Wilkinson informed his supervisor that he was "familiar with the suspect, and [he] knew where he hangs out." Id. InState v. Cooper (1977), 52 Ohio St.2d 163, vacated in part on other grounds, (1978), 438 U.S. 911, 98 S.Ct. 3137, the Supreme Court of Ohio stated,
Simply because the deputy stated during trial that he had prior contact with the defendant in an official capacity does not indicate that the defendant had a prior record or had committed prior similar acts. At trial, the deputy merely testified that, based on his prior acquaintance with the defendant, the defendant was now more calm and more cooperative with authorities than he had been previously. There is no indication of prejudice resulting from this testimony. * * *
Id. at 170.
 {¶ 25} Officer Wilkinson's testimony that he knew defendant's street name from prior contact with defendant and that he was familiar with a location where defendant frequently visited did not indicate that defendant had a prior record or had committed similar acts in the past. Therefore, this testimony of Officer Wilkinson was not admitted in violation of Evid.R. 404(B).
 {¶ 26} Second, defendant cites to Shirley Davis's testimony that "Speedy is a repeat offender." Defendant also cites to Ms. Davis's statements in the colloquy with the state, defense counsel, and the judge. As demonstrated by the transcript of the trial proceedings, Ms. Davis's statement that defendant was a repeat offender was not admitted into evidence, and the court twice provided a curative instruction regarding the statement. Thus, Evid.R. 404(B) could not have been violated because Ms. Davis's statement was not admitted into evidence.
 {¶ 27} To the extent defendant argues that the trial court erred in not granting a mistrial in view of Ms. Davis's statements, which included unsolicited statements, the argument is unpersuasive. The decision to grant or deny a mistrial is a matter within the sound discretion of the trial court. State v. Glover (1988), 35 Ohio St.3d 18. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." State v. Franklin (1991), 62 Ohio St.3d 118, 127. Moreover, a jury is presumed to follow curative instructions given to it by a trial judge. State v. Garner (1995), 74 Ohio St.3d 49, 59.
 {¶ 28} Regarding outbursts by witnesses, the Supreme Court of Ohio, inState v. Hill (1996), 75 Ohio St.3d 195, at 204, stated:
The impact of emotional outbursts at trial by witnesses or spectators cannot be judged by an appellate court on a cold record. "Was the jury disturbed, alarmed, shocked or deeply moved? * * * These questions necessarily depend on facts which no record can reflect." State v.Bradley (1965), 3 Ohio St.2d 38, 40. Normally, only the trial judge can make the necessary factual determinations on these questions. "[H]is findings thereon will not be disturbed on review in the absence of evidence on the face of the record clearly and affirmatively showing that the jury was improperly affected * * *." Bradley at 41. Accord State v.Morales (1987), 32 Ohio St.3d 252, 255.
 {¶ 29} Upon our review of the record, we find no abuse of discretion in the trial court's refusal to grant a mistrial. The trial court promptly instructed the jury to not consider the statements of Ms. Davis indicating that defendant is a repeat offender, which the jury presumptively followed. Moreover, nothing indicates that the curative instruction was insufficient to negate any possible bias. In fact, the trial court specifically asked each juror regarding possible prejudice. Each juror responded that his or her judgment would not be appreciably impaired by Ms. Davis's "repeat offender" statement. We conclude that defendant has failed to demonstrate that he suffered material prejudice so that a fair trial was no longer possible.
 {¶ 30} Third, defendant cites to the testimony of Arthur Wynn regarding threatening statements defendant allegedly made to him, apparently in support of his argument that certain evidence was improperly admitted by the trial court. In order to determine the admissibility of statements defendant allegedly made to Mr. Wynn, the trial court held a hearing, outside the presence of the jury, pursuant to Evid.R. 104. Subsequent to the hearing, the court ruled that the statements to Mr. Wynn would be admissible. However, when Mr. Wynn testified before the jury, he did not testify regarding the threatening statements that defendant allegedly made to him, which were the subject of the Evid.R. 104 hearing.
 {¶ 31} Considering the foregoing, defendant's second assignment of error is overruled.
 {¶ 32} By his third assignment of error, defendant alleges that he was denied the effective assistance of counsel. In order to establish ineffective assistance of counsel, defendant must meet the two-part test outlined in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. First, defendant must demonstrate that his trial counsel's performance was deficient. Namely, defendant must show "that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. A court reviewing an ineffective assistance of counsel claim must determine whether, under the circumstances, the acts or omissions were "outside the wide range of professionally competent assistance." Id. at 690.
 {¶ 33} Second, in order for defendant to establish ineffective assistance of trial counsel, defendant must demonstrate that the deficient performance prejudiced defendant. This requires defendant to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
 {¶ 34} Defendant argues that his trial counsel was ineffective when he did not object to the testimony of the police officers regarding information aired on the police radio identifying the suspect as Speedy and Speedy as James Harris. Defendant contends that trial counsel was ineffective in not objecting to Officer Wilkinson's testimony regarding his prior contact with defendant. As discussed above, the trial court did not err in admitting this testimony of Officer Wilkinson or the testimony regarding the statements made on the police radio. Consequently, we find that defense counsel was not deficient in not objecting to that testimony.
 {¶ 35} Defendant argues that trial counsel was ineffective in not immediately objecting to the following question the state presented to Ms. Davis, "Ma'am, why didn't you want to come into court?" (Tr. 229.) Ms. Davis responded to the question by stating that defendant is a repeat offender. Defendant's trial counsel objected after Ms. Davis stated her answer. Defendant argues that his trial counsel should have objected to the question prior to Ms. Davis's response. The court did not overrule the objection on the basis that it was untimely. In fact, the trial court sustained the objection and instructed the jury to disregard Ms. Davis's comment that defendant had a prior record. The curative instruction sufficiently negated any prejudice resulting from Ms. Davis's comment. Thus, counsel was not ineffective for failing to object prior to Ms. Davis's response to the question.
 {¶ 36} Additionally, defendant argues that his trial counsel should have immediately moved for a mistrial after Ms. Davis made her statements regarding why she did not want to testify. Defendant's trial counsel did not move for a mistrial in response to the statements until the next day of trial. The trial court summarily denied the motion, and stated its intent to give a stronger curative instruction to the jury. The trial court took extraordinary steps to ensure that defendant would not be prejudiced by Ms. Davis's statement that defendant had a prior record. Even if counsel had immediately moved for mistrial, it would not have been an abuse of discretion for the trial court to deny the motion. Therefore, we conclude that counsel was not ineffective for the delay in moving for a mistrial.
 {¶ 37} Based on the foregoing, we conclude that defendant was not deprived of his right to effective assistance of counsel. Accordingly, we overrule defendant's third assignment of error.
 {¶ 38} In his fourth assignment of error, defendant contends that the cumulative effect of the alleged errors during trial deprived defendant of his constitutional right to a fair trial. "Pursuant to [the cumulative error] doctrine, a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal."Garner, supra, at 64. "The doctrine of cumulative error is not applicable unless there are multiple instances of harmless error." State v.Armstead (Nov. 27, 2001), Franklin App. No. 01AP-44, citing Garner.
Furthermore, the doctrine of cumulative error is obviously inapplicable when there are no instances of error. State v. Campbell, Franklin App. No. 03AP-147, 2003-Ohio-6305, at ¶ 48.
 {¶ 39} Because we have found no error in the trial court proceedings in this case, we also find the cumulative error doctrine to be inapplicable. Consequently, we overrule defendant's fourth assignment of error.
 {¶ 40} Having overruled defendant's four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Bryant and Klatt, JJ., concur.
[1] Dr. Fardal explained that the power piston is "the part of the shotgun projectile that holds the pellets within the shell." (Tr. 367.)