OPINION {¶ 1} Appellants Rhonda Sherman ("Rhonda") and Roland Sherman ("Roland") bring this appeal from the judgment of the Court of Common Pleas of Hancock County, Juvenile Division, granting permanent custody to the Hancock County Job and Family Services, Children's protective Services Unit ("CPSU") and terminating their parental rights in regard to Daneaka Sherman ("Daneaka"), Daneasha Sherman ("Daneasha"), and Dateaka Sherman ("Dateaka").
 {¶ 2} Rolland and Rhonda are the parents of four children: Dateasha Sherman ("Dateasha"), born on November 19, 1989; Dateaka, born on November 18, 1990; Daneasha, born on August 26, 1992; and Daneaka, born on January 25, 1994. After experiencing marital problems, which included a domestic violence charge against Rolland, the couple separated. Rolland moved to Toledo while Rhonda remained in Findlay with the girls.
 {¶ 3} On July 22, 2003, the girls were removed from Rhonda's home by ex parte order. A shelter care hearing was held on July 24, 2003. An adjudication hearing was held on October 9, 2003. By agreement of the parties, the neglect charges were dismissed and Rhonda admitted to the dependency of the children. The dispositional hearing was held on October 23, 2003. The trial court ordered that CPSU maintain temporary custody and ordered an amended case plan, which included activities for Rolland. Rolland was ordered to attend parenting classes, attend a domestic violence education program, and submit to a mental health and substance abuse screening.
 {¶ 4} On June 23, 2004, CPSU filed for permanent custody of the girls. The basis for the motion was that permanent custody was in the best interests of the girls and that the girls could not be placed with either parent within a reasonable time. A hearing was held on the motion on November 3 and November 5, 2004. At the conclusion of the hearing, the trial court granted permanent custody of all four girls to CPSU and terminated Rolland and Rhonda's parental rights. This judgment was appealed to this court on March 3, 2005. On November 7, 2005, this court reversed the grant of permanent custody.
 {¶ 5} On November 10, 2005, CPSU again filed a motion for permanent custody of the four girls. The basis for this motion was that 1) permanent custody was in the best interest of the girls, 2) that the girls could not be placed with either parent within a reasonable time, 3) that the girls had been in the temporary custody of CPSU for twelve or more months of a consecutive twenty-two month period, and; 4) the Sherman girls were abandoned by their father. A hearing was held on the motion on April 4 and 5, 2006. On April 12, 2006, the trial court granted CPSU's motion for permanent custody as to Dateaka, Daneasha, and Daneaka, finding that the girls could not be placed with either parent within a reasonable time. The trial court denied the motion for permanent custody as to Dateasha due to Dateasha's age, personal wishes, her lack of desire to be adopted, and the unlikelihood of finding an appropriate adoptive home for her. Both Rolland and Rhonda appeal the trial court's judgments regarding Dateaka, Daneasha, and Daneaka. Rhonda raises the following assignments of error.
 The trial court erred in failing to grant [Dateasha's] request to be present in the courtroom during the permanent custody proceedings, conducted April 4, 2006, and April 5, 2006, as she is a necessary and indispensable party, pursuant to [Juv.R. 2(y) and 27(A)(1)].
 The trial court erred in not requiring paternity testing to be performed on the minor children as all necessary and indispensable parties were not present during these court proceedings.
 The trial court erred in granting permanent custody to [CPSU] because [CPSU] failed to develop and implement a case plan reasonably calculated to achieve the goal of reunification of the minor children with either parent after the original permanent custody hearing, held November 3 5, 2004, was reversed and remanded.
 The trial court erred in granting permanent custody to [CPSU] because [CPSU] failed to diligently pursue efforts to reunify the minor children with either parent as [Rhonda] was denied any visitation with the appealing (sic) minor children.
 The trial court erred in its decision to terminate [Rhonda's] parental rights and responsibilities and grant permanent custody to [CPSU], as said decision is not supported by sufficient evidence and/or is against the manifest weight of the evidence.
 The cumulative effect of multiple errors, occurred (sic) at trial, deprived [Rhonda] of her constitutional right to a fair trial, even though each individual error may not have constituted cause for reversal.
 {¶ 6} Rolland raises the following assignments of error.
 The lower court erred in granting permanent custody of [Dateasha, Daneasha, and Dateaka] to [CPSU] because the case plan implemented by [CPSU] was not reasonably calculated to succeed in reunifying the four Sherman girls with their biological father, [Rolland].
 The lower court erred in granting permanent custody of [Dateasha, Daneasha, and Dateaka] to [CPSU] because [Rolland] substantially complied with the case plan.
 The lower court erred by not providing for all necessary and indispensable parties were [sic] made a party to the action for permanent custody pursuant to [Civ.R. 12(B)(7) and (19)].
 The lower court's decision to terminate [Rolland's] parental rights and grant permanent custody to [CPSU] is not supported by sufficient evidence and or is against the manifest weight of the evidence.
 {¶ 7} Rhonda's first assignment of error alleges that the trial court erred in excluding Dateasha from the hearing as she is a necessary party. A child who is the subject of a juvenile proceeding is a party to the action. Juv.R. 2(Y). However, a trial court may excuse the attendance of a child at a hearing where the child is alleged to be abused, neglected, or dependent. R.C. 2151.35(A)(1). The decision whether to allow a child to attend a hearing on a motion for permanent custody is within the sound discretion of the trial court and will not be overturned without a showing of abuse of that discretion. Here, the trial court stated that it was not allowing Dateasha to be present because the testimony in the first hearing was traumatic for her and the trial court did not wish for her to witness additional testimony and suffer additional trauma. Although Dateasha was almost seventeen at the time of the hearing, she was still a minor and the trial court did not abuse its discretion by attempting to protect her from what it believed would cause her to suffer additional trauma.
 {¶ 8} Additionally, the party aggrieved by the trial court's ruling is Dateasha, not Rhonda. Dateasha has not appealed the trial court's ruling.
 It is well established in Ohio that an appeal lies only on behalf of a party aggrieved. Such party must be able to show that he has a present interest in the subject matter of the litigation and that he has been prejudiced by the judgment of the lower court." One may not challenge an alleged error committed against a non appealing party absent a showing that the challenger has been prejudiced by the alleged error.
In re D.H., 8th Dist. No. 82533, 2003-Ohio-6478, ¶ 7 (citing In re Love (1969), 19 Ohio St. 2d 111, 249 N.E.2d 794, andIn re Cook (Oct. 8, 1998) Hancock App. No. 5-98-16, unreported). CPSU's motion for permanent custody of Dateasha was denied. Since Dateasha did not appeal and Rhonda has shown no personal prejudice, Rhonda has no standing to raise the issue on Dateasha's behalf. Rhonda's first assignment of error is overruled.
 {¶ 9} Rolland and Rhonda both allege in assignments of error that the trial court erred in proceeding without requiring paternity tests since all necessary parties may not have been present. As discussed above, both Rolland and Rhonda are attempting to raise an issue which does not affect their rights. The alleged missing party would be any other person claiming to be the father of one or more of the girls besides Rolland. Thus, it is his right to be present which is being prejudiced. If Rolland is the father of all four girls, he was present and his rights were represented. If Rolland is not the father of one or more of the girls, he has no parental rights to the child or children and thus is not being deprived of any rights. Likewise, Rhonda's parental rights are not affected by the presence of lack of presence of any other alleged father. Therefore, neither party has standing to raise this issue on appeal. Rhonda's second assignment of error is overruled and Rolland's third assignment of error is overruled.
 {¶ 10} In Rhonda's third assignment of error and in Rolland's first assignment of error, they both allege that the trial court erred in finding that CPSU had made reasonable efforts at reunification because no efforts were made after the 2005 judgment of the trial court was reversed by this court. This court notes that the original judgment granting permanent custody of all four girls to CPSU was reversed and remanded for further proceedings. However, the matter was not reversed due to either the sufficiency of the evidence or on the manifest weight of the evidence. The original judgment was reversed due to procedural and evidentiary issues. The final judgment of this court was released on November 7, 2005. On November 10, 2006, CPSU refiled its motion for permanent custody.
 {¶ 11} A case plan was originally implemented for each of the children in 2003. For over one year, the parties had time to make progress on the case plan. Understandably for approximately one year, from the time the trial court released its original judgment in November of 2004, until this court released its judgment in November of 2005, no services were offered under the case plans because CPSU was proceeding as if it had permanent custody of the children. Once the original judgment was reversed, the prior caseplan was once again effective, even though CPSU had once again filed a motion for permanent custody. This caseplan required Rhonda to attend substance abuse counseling and follow the recommendations of her counselors, which would include stopping her drinking, and to obtain a safe and stable home, which were not done. After this court reversed the original judgment, the case worker contacted Rhonda to set up a home visit. Tr. 694. Rhonda refused to allow the home visit while she resided with Ron Evans. Id. Rhonda then moved in with her adult son in February of 2006. Id. at 693. One home visit was completed at that address. In March, 2006, Rhonda moved to another home. A home study was attempted on April 3, 2006, but Rhonda was not present. Id. at 694. As part of the case plan, Rhonda was required to 1) obtain stable housing, 2) complete a parenting program, 3) complete a mental health assessment, and 4) actively participate in substance abuse treatment. Id. at 732-743. Those same requirements were reviewed and agreed to by Rhonda in February 2006. In addition, CPSU arranged for visitation with Dateasha upon the court order and even went back to the court to allow for changes in the court order to assist Rhonda in continuing visitation when her work schedule interfered with the visits. Based upon the testimony of the social worker regarding the steps taken to assist Rhonda in making progress on the case plan between November 2005 and April 2006, as well as the efforts made prior to November 2004, the trial court did not abuse its discretion in finding that CPSU made reasonable efforts to reunite the children with Rhonda. Thus, Rhonda's third assignment of error is overruled.
 {¶ 12} Like Rhonda, Rolland also claims that reasonable efforts were not made to reunite him with his children, particularly after November 2005. The case worker testified that he contacted Rolland in December 2005. The case worker made a home visit to Rolland on January 11, 2006. Id. at 701. The home was too small for all four girls, which Rolland admitted. Id. at 702. Rolland stated that it was temporary housing, but did not obtain other housing. Id. In March of 2006, Rolland refused to allow the case worker to make any additional home visits. Id. at 703. Visits were granted with Dateasha per a court order. However, Rolland only attended two of the ten scheduled visits. Id. at 715. When CPSU learned that transportation was an issue with Rolland, they offered him transportation. Rolland was also reminded of the terms of the case plan. The case plan required him to 1) attend parenting classes, 2) obtain education concerning diabetes, 3) obtain domestic violence counseling, and 4) obtain substance abuse and mental health assessments. Id. at 744-759. The case worker testified to numerous conversations he had with Rolland concerning the case plan. Rolland repeatedly informed the case worker that the objectives had been completed and he did not believe he had to do anything more. Based upon the testimony before it, the trial court did not err in finding CPSU had made reasonable efforts to reunite Rolland with his children. Rolland's first assignment of error is overruled.
 {¶ 13} In Rolland's second assignment of error, he claims the trial court erred in not finding that he had completed the case plan. As discussed above, Rolland had four basic objectives to complete. Rolland had completed the parenting class and the substance abuse assessment. Rolland had also completed a mental health assessment and signed all releases. However, Rolland had not followed through with the recommendations of the counselors. The caseworker testified that Rolland had been required to complete domestic violence counseling, both as part of the case plan and as a recommendation of the mental health counselor. As of the date of the second hearing, this had not been done. Although Rolland claimed to have completed the counseling, no documentation was provided to substantiate the claim, and the counselor testified he had not completed the program. Id. at 755-57. Further testimony was given that a substantiated claim of violence by Rolland against one of the girls had been made. Id. The caseworker testified that in his opinion, even if Rolland had completed the counseling, he believed, based upon his observations and interactions with Rolland, that Rolland still had power and control issues. Id. Additionally, Rolland had been required to obtain additional information concerning diabetes. He claimed to have done so, but again was not able to show any documentation of such. Id. at 747. Finally, Rolland had not obtained proper housing for the girls and did not exercise the visitation with Dateasha that was granted, having only made two out of ten scheduled visits. The trial court did not abuse its discretion by relying upon this evidence in finding that Rolland had not substantially completed the case plan. Thus, Rolland's second assignment of error is overruled.
 {¶ 14} Rhonda's fifth assignment of error and Rolland's final assignment of error both claim that the trial court's judgment was against manifest weight of the evidence and was not supported by sufficient evidence. To terminate parental rights, the trial court must determine by clear and convincing evidence that a grant of permanent custody to CPSU is in the best interest of the child and that the child cannot or should not be placed with either parent within a reasonable time. In re Wise (1994),96 Ohio App.3d 619, 645 N.E.2d 812. Id. In this case, the trial court made the following findings of fact and conclusions of law for each of the three children at issue.
 [T]his Court finds that following the placement of the child outside her home and, not withstanding reasonable cause (sic) planning and diligent efforts by the Agency to assist the parents to remedy the problems that initially caused the child to be placed in foster care, the parents have failed continuously and repeatedly to substantially remedy the conditions which caused said child to originally be placed in care on July 22, 2003. In determining these factors, the Court has considered parental utilization of social and rehabilitative services and material resources that were made available to the parents with the purpose of changing their conduct to allow them to assume and maintain parental duties. The Court further considered the chronic alcoholism of the mother that is so severe that it makes the mother unable to provide an adequate permanent home for the child and the fact she has been indicted for her fourth offense of felony Driving while Intoxicated and that said alcoholism is currently untreated and the mother is actively drinking as of the date of this hearing. In addition to the felony charge, mother is facing the possibility of serving a 177 day sentence that has been previously suspended through the Findlay Municipal Court. The father has difficulty with transportation which would make it difficulty (sic) to tend to the child's needs. In addition he has been found to have committed a substantiated act of abuse on the child or her siblings and has refused to complete the UNISOM domestic violence program as specified in his case plan. The case worker opined that Mr. Sherman has many unresolved power issues that would make it unsafe for the child to return to his home. The Court determines that the seriousness, nature, or likelihood of recurrence of the domestic violence and abuse makes the child's placement with the father a threat to the child's safety. The mother has demonstrated a lack of commitment toward the child by failing to provide a safe or secure home for the child and has resided on a regular basis with a purported child sexual abuser.
April 12, 2006, Judgment Entry, 3-4. Based upon these findings, the trial court determined that the children's best interest would not be served by returning the children to their parents. Id. at 4. The trial court found that the best interests of the children would be served by granting CPSU's motion for permanent custody and that the children should not be returned to their parents within a reasonable time.
 {¶ 15} A review of the record indicates that there is substantial evidence to support the trial court's findings of fact. As discussed above, Rolland has failed to complete his case plan by not finding appropriate housing, by not completing the domestic violence treatment, and by not obtaining training in managing diabetes as would be necessary to parent one of the girls. Additionally, Rolland did not appear for the majority of his visits with Dateasha. The record also reveals that Rhonda was arrested the weekend before the hearing for driving while under the influence. This was her fourth offense and was a felony. Although Rhonda had made her visitations with Dateasha and had found her own apartment, she still has not addressed her alcoholism and continues a relationship with a known sex offender. Based upon the evidence before it, the trial court's judgment is supported by sufficient evidence and is not against the manifest weight of the evidence. Rhonda's fifth assignment of error and Rolland's fourth assignment of error are both overruled.
 {¶ 16} Rhonda's fourth assignment of error claims that the trial court erred in granting permanent custody to CPSU when she was denied visitation with Daneaka, Daneasha, and Dateaka. On October 27, 2005, Rhonda filed a motion with the trial court seeking visitation with the four girls. The trial court denied visitation with Daneasha, Dateaka, and Daneaka on January 23, 2006. However, the trial court granted supervised visits with Dateasha. Rhonda again filed for visitation with the three younger girls on January 25, 2006, and again the trial court denied the motion. Based upon this, Rhonda claims that CPSU was not diligently seeking reunification. A review of the record indicates that prior to the first termination of parental rights, CPSU had not interfered with Rhonda's visitation with the girls, other than to separate them into groups of two rather than all four girls at one time. Once the original judgment was reversed, CPSU immediately refiled for permanent custody. Although CPSU may not have wished for the visits to occur, it was the judgment of the trial court that prevented the visitations, not the actions of CPSU.
 {¶ 17} In support of her assignment of error, Rhonda refers this court to the judgment in In re Jessica McCormick, (Aug. 28, 1992), Erie County App. No. E 91-79, unreported. In McCormick, the appellate court reversed the judgment of the trial court granting permanent custody to the agency. The appellate court held as follows.
 The statute requires: 1) after removal from the home there must be diligent efforts by the [agency] to assist the parent to remedy the problem that initially caused removal; and 2) the parent has failed continuously and repeatedly for a period of six months to substantially remedy the conditions causing removal.
 These children were first taken into appellee's custody on June 2, 1988, when appellant and the children became homeless after being evicted from the motel in which they were staying because they had no money. A neglect complaint placed the blame for this on appellee's "chronic irresponsibility." In the summer of 1989, after receiving treatment and establishing a home with a male companion, appellant was within a few weeks of reunification with her children when she left her male companion and returned to Sandusky.
 Even though appellant soon found housing and work, in September 1989, appellant's visitation was "temporarily" terminated. During the next two years appellant made repeated requests for visitation, but was denied even supervised contact with her children. This denial of visitation occurred in spite of the fact that there was no credible evidence in the hundreds of pages of appellee's notes about this relationship that indicated appellant posed a threat to the children. Appellee simply failed to recognize that appellant within months of the cessation of visitation found employment and housing which she had maintained for eighteen months to the day of the final hearing. The testimony from the children's counselor that they had missed their mother for the first six months after visitation was stopped but then had no desire to see her after that is heartbreaking. Such gratuitous denial of visitation characterizes appellee's efforts to reunify mother and child as anything but diligent.
Id. at *28-29. In McCormick, the agency was responsible for the termination of visitation. Additionally, the termination occurred prior to the filing of the motion for permanent custody and continued for almost two years.
 {¶ 18} The case before us contains a different set of facts. Here, Rhonda was denied visits with the three youngest girls by order of the court. At the time the judgment was entered, CPSU had already filed for permanent custody. CPSU had diligently provided visitation opportunities prior to the original filing for permanent custody. Additionally, the trial court received the report of the guardian ad litem reporting the wishes of the children regarding visitation prior to entering its judgment. Dateasha indicated that she would like visits with both parents and wanted to live with either one of them rather than foster care. Jan. 19, 2006 GAL report. Dateaka indicated that she would like to visit with her parents but only if she could be assured that she would not have to go through another final visit after the April permanent custody hearing. Id. Daneasha stated that she did not want to visit with her parents, but would if she had to do so, even though she would be sad after every visit. Id. Finally, Daneaka indicated that she did not want to visit with Rolland at all, and only would visit with Rhonda if she absolutely had to do so and Rhonda promised not to discuss the case. Id. The guardian recommended that no visitation be allowed. Having this report before it and hearing the arguments made before it, the trial court had sufficient basis for granting visitation with Dateasha and denying it with the three other girls. Since the trial court's judgment is supported by sufficient evidence, no failure to diligently provide services by denying visitation occurred. Rhonda's fourth assignment of error is overruled.
 {¶ 19} Finally, Rhonda claims that the cumulative effects of the errors denied her a fair trial. However, for the doctrine of cumulative error to apply, appellant must establish multiple instances of harmless error during the course of the trial. State v. Garner (1995),74 Ohio St.3d 49, 656 N.E.2d 623. Having found no instances of harmless error in this case, there can be no cumulative effect. State v. Harris, 10th Dist. No. 04-AP12, 2005-Ohio-4676, ¶ 39. Rhonda's sixth assignment of error is overruled.
 {¶ 20} The judgments of the Court of Common Pleas of Hancock County, Juvenile Division, are affirmed.
Judgments affirmed.
 SHAW, J., concurs.
 ROGERS, J., concurs in judgment only.