JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal by T.H. from an order of Juvenile Court Judge John Gallagher granting permanent custody of her child, D.H.,[1]
to Cuyahoga County Department of Children and Family Services ("CCDCFS"). She challenges the jurisdiction of the court claiming a lack of adequate notice of the hearing. We agree, vacate and remand
 {¶ 2} T.H. was sixteen when she gave birth to a daughter, D.H., in February, 2001. They lived with T.H.'s legal guardian, her grandmother, until October 2001 when she was told to leave. Without housing, they were placed in county custody and in a foster home but, shortly after placement, T.H. left her child with T.H.'s father and disappeared. On October 26, 2001, CCDCFS filed a complaint to obtain temporary custody of the child alleging neglect and dependency because of lack of housing.[2]
 {¶ 3} After a continuance, a temporary custody hearing was held on January 16, 2002. Both of T.H.'s parents appeared, waived their right to counsel, and agreed to the temporary custody placement with CCDCFS. Her mother stipulated to the allegations in the complaint about her chronic substance abuse and the termination of her parental rights to T.H. and another child fourteen years earlier. T.H.'s father stipulated that he was unwilling/unable to care for either his daughter or her child. The State then filed an amended complaint adding T.H.'s parents as parties, and another hearing was scheduled.
 {¶ 4} On February 27, 2002, D.H. was found neglected and dependent and placed in the temporary custody of CCDCFS. Five months later, CCDCFS moved to modify temporary custody to permanent custody.
 {¶ 5} A trial on the motion was held on January 28, 2003.[3] The judge heard from Social Worker Tanya LaVigne that case plans had been filed for both T.H. and L.K., the putative father. T.H. was to obtain stable housing, complete parent education, and find employment; L.K. was to establish paternity and identify his residence; however, neither completed their case plan. She stated that, as of that date, T.H. had visited her child only twice from October 2001 through approximately August 2002 when CCDCFS filed for permanent custody. After hearing her testimony, and the oral recommendation and written report of the child's guardian ad litem, the judge granted CCDCFS's motion for permanent custody.
 {¶ 6} T.H.'s sole assignment of error, set forth in Appendix A, challenges the validity of the permanent custody hearing notice, but her brief also questions the court's jurisdiction for the temporary custody hearing and she utilizes three grounds: First, she asserts a claim, on behalf of L.K., that the affidavit filed in conjunction with the service by publication on him, of the notice of the temporary custody, reveals that CCDCFS made only minimal efforts to find him, and not "reasonable efforts" to identify his location for notice. Second, she asserts that the July 31, 2002 motion to modify temporary custody is invalid, because the affidavit for publication concerning both herself and L.K., incorrectly listed Meghan Orazen as the affiant when James M. Price actually signed the affidavit. T.H. contends that the judge could not properly identify which person had made the necessary efforts to locate either of them. Finally, T.H. asserts that the summons issued to L.K. on October 4, 2002, and her legal guardian on December 3, 2002, were invalid because they were not endorsed.
 Standing {¶ 7} T.H. does not have standing to raise the issue of jurisdiction for L.K. "It is well established in Ohio that an appeal lies only on behalf of a party aggrieved. Such party must be able to show that he has a present interest in the subject matter of the litigation and that he has been prejudiced by the judgment of the lower court."[4] One may not challenge an alleged error committed against a non-appealing party absent a showing that the challenger has been prejudiced by the alleged error.[5]
 {¶ 8} T.H. cites In re Call[6] for the proposition that one parent has standing on appeal to challenge the permanent custody order as void for failing to serve the other parent. In re: Call, however, is distinguishable because the parents were married, paternity had been established, and the father had the standing to challenge the service of the permanent custody motion on the mother, his wife, because, "[t]o grant permanent custody, the court is required to find that the child cannot be returned to either parent. Where one parent is unable to defend against this challenge, prejudice to the other parent is inherent."
 {¶ 9} In the present case, L.K. has never come forward, has never submitted to a paternity test, and has never asserted interest in retaining custody of the child. Because there is no evidence that L.K. is the father of D.H., his purported inability to defend against termination of his "parental rights" does not result in prejudice to T.H.
 {¶ 10} T.H. asserts that her legal guardian, her grandmother, did not receive service of summons and notice of the January trial. The record, however, reflects that on October 15, 2002, her legal guardian was properly served because the notice was endorsed and left at the guardian's residence. Furthermore, had the notice been defective, T.H. could not claim prejudice because she attained her majority on December 9, 2002, and was then sui juris.
 Service by Publication on T.H. {¶ 11} T.H. contends that, because the affidavit for service by publication of the July 31, 2002 Motion to Modify Temporary Custody incorrectly listed the affiant as Meghan Orazen, the initial social worker, when James M. Price actually endorsed it, such service upon her was defective.
 {¶ 12} Civ.R. 56(E) provides in pertinent part:
"Supporting and opposing affidavits shall be made on personalknowledge, shall set forth facts as would be admissible in evidence, andshall show affirmatively that the affiant is competent to testify to thematter stated in the affidavit."
 {¶ 13} The main requirement of an affidavit is that it be in writing and that it be sworn to or affirmed before a legally authorized officer.[7] Although a proper affidavit should contain a caption or title, a statement of the venue, and a jurat, no formal solemnities are necessary other than the signature of the affiant and the official statement of the officer that the affidavit was subscribed and sworn to before him.[8] If an affidavit states the requisite facts, the form or order in which they are stated is immaterial.[9]
 {¶ 14} Although the instant affidavit is not a model of good drafting, it does contain a statement by the notary certifying that the content was sworn to and it was subscribed in her presence by Price. The publication, therefore, was legally supported.
 Notice of the Permanent Custody Hearing {¶ 15} T.H.'s attenuated argument about whether the judge had jurisdiction to conduct a permanent custody hearing, however, has merit. On October 4, 2002, service was issued to all named parties advising them of a December 3, 2002 Permanent Custody hearing. The December 3rd
hearing, however, appears to have been cursory and the trial was scheduled for January 28, 2003. Parties who acknowledged receipt of trial notice included T.H.'s father and her guardian ad litem, the child's guardian ad litem, the assigned social worker, and CCDCFS's lawyer. After the hearing, a summons was sent to T.H.'s mother by ordinary mail. Noticeably absent from this list, however, are T.H., her legal guardian, and L.K.
 {¶ 16} Although we can decipher from the record that all parties had notice of the December 3rd preliminary hearing, we cannot say the same is true for the January 28, 2003 trial. Not only was service never perfected on T.H., it shows that service was never even attempted. To grant permanent custody to CCDCFS, the judge must find that the child cannot be returned to either parent. T.H. was denied the right to defend her parental rights in a full adjudication.[10] Because T.H. was deprived of due process, the permanent custody award of her child to CCDCFS must be vacated, temporary custody of D.H. to the agency reinstated and the matter remanded. This assignment of error has merit.
 {¶ 17} Judgment vacated, temporary custody reinstated and matter remanded.
 APPENDIX A: ASSIGNMENT OF ERROR {¶ 18} "The trial court lacked Jurisdiction to issue an order of permanent custody as it did not provide reasonable notice to appellant of the permanent custody hearing."
It is ordered that appellant recover of appellee its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, J., And JAMES D. SWEENEY,* J., CONCURS.
[1] This court protects the identity of all parties in Juvenile court cases.
[2] R.C. 2151.27.
[3] By then both of T.H.'s parents and her GAL were removed as necessary parties because she had reached her eighteenth birthday. Although she had reached her majority at the time of the trial, contrary to the trial testimony, she was not eighteen at the time the motion to modify temporary custody was filed. The record reflects T.H.'s birthday was December 9, 1984, not July, 1984.
[4] In re: Love (1969), 19 Ohio St.2d 111, 249 N.E.2d 794.
[5] In re Cook (Oct. 8, 1998), Hancock App. No. 5-98-16; In re M.M.
(Feb. 2, 2002), Cuyahoga App. No. 79947.
[6] (Apr. 12, 2001), Cuyahoga App. No. 78376.
[7] 1 Ohio Jurisprudence 3d ACKNOWLEDGMENTS, AFFIDAVITS, OATHS AND NOTARIES (2002)Section 36, citing 3 American Jurisprudence 2d, Affidavits Sect. 12.
[8] Ohio Jurisprudence, supra; Ashley v. Wright (1869),19 Ohio St. 291.
[9] Ohio Jurisprudence, supra; Bingham v. Hill (1883),38 Ohio St. 657.
[10] In re Sky Jones, (Nov. 22, 2000), Cuyahoga App. No. 76533.
* Sitting by ASSIGNMENT: Judge James D. Sweeney, retired, of the Eighth district Court of Appeals.