[Cite as *In re J.T.*, 2022-Ohio-4214.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

|                            |   |            |
|----------------------------|---|------------|
| IN RE J.T., ET AL.         | : |            |
|                            | : | No. 111749 |
| Minor Children             | : |            |
|                            | : |            |
| [Appeal by L.T., Mother]   | : |            |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 23, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD20904438 and AD20904439

### *Appearances:*

Patrick S. Lavelle, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee CCDCFS*.

Cullen Sweeney, Cuyahoga County Public Defender, and
Britta Barthol, Assistant Public Defender, *for appellee J.T.*

MARY EILEEN KILBANE, P.J.:

{¶ 1} Appellant L.T. ("Mother") appeals from the juvenile court's decision awarding permanent custody of her minor twin children ("the children" or "the

twins") to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency"). For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} The children were born to Mother and appellee-father J.T. ("Father") in June 2018. Because Mother tested positive for illegal substances at the time of their birth, the twins were initially placed in CCDCFS custody in June 2018 under a separate case number. In that case, the twins were adjudicated abused and dependent due to Mother's substance abuse, and they remained in CCDCFS custody until spring 2020. In the spring of 2020, the twins were reunified with Mother.

{¶ 3} Approximately two weeks later, on April 28, 2020, the underlying cases were initiated when the children were again removed from Mother's custody by a telephonic order for emergency custody when Mother relapsed and was found unconscious with the children. At that time, Father was incarcerated.

{¶ 4} On April 29, 2020, the agency filed a complaint for neglect, dependency, and permanent custody, alleging that Mother had a substance abuse problem that prevented her from providing safe and adequate care for the children. The complaint also identified J.T. as the twins' alleged father and alleged that he had failed to establish paternity and support, visit, or communicate with the children. A case plan was created, and Mother's case plan objectives were to complete

substance-abuse and mental-health treatment programs and to address parenting and housing issues.

{¶ 5} On January 11, 2021, the court held a hearing on the agency's dispositional request for permanent custody. The court denied permanent custody and ordered the children placed in the temporary custody of the agency.

{¶ 6} Mother completed substance abuse and parenting programs in February 2021. In May 2021, Mother relapsed yet again, and the agency was unable to maintain consistent contact with her after that point.

{¶ 7} Father was released from prison in May 2021 and reached out to CCDCFS. Father's case plan objectives were related to substance use because he had previously tested positive for marijuana, as well as establishing paternity and establishing a bond with the twins. Father had completed a parenting program while incarcerated.

{¶ 8} On July 23, 2021, CCDCFS filed a motion to modify temporary custody to permanent custody.

{¶ 9} Father subsequently established paternity, completed an intensive outpatient treatment as recommended by the agency, and he also completed random drug screenings. When Father had achieved six months of sobriety, the agency began to work towards reunification with Father. As part of this goal, the children had overnight and extended visitation with Father.

{¶ 10} On March 2, 2022, CCDCFS filed a motion for continuance of the trial on its motion to modify temporary custody to permanent custody. CCDCFS

submitted that Father had "meaningfully engaged with his case plan objectives and visitation in recent months" and in light of this engagement, CCDCFS believed that continuing the trial would facilitate ongoing visitation in accordance with the permanency plan of reunification. An updated case plan to this effect was filed on March 3, 2022. On March 9, 2022, the court granted the agency's motion for a continuance. On March 22, 2022 the court adopted the updated case plan.

{¶ 11} On April 20, 2022, CCDCFS filed a motion to amend its dispositional prayer from "permanent custody" to "legal custody to Father without restriction." The motion noted that Father had made significant progress and that it was in the children's best interest to be committed to Father's legal custody. Specifically, the motion stated that Father had successfully completed all required case plan objectives to address concerns related to substance abuse, provision of basic needs, and paternity establishment. Further, the motion stated that Father had completed all recommended substance abuse treatment and maintained a meaningful period of sobriety. Finally, the motion stated that Father had been having unsupervised overnight visitation with the children and the visits had gone well.

{¶ 12} On April 18 and April 28, 2022, Father submitted two drug tests that were positive for Fentanyl. As a result, visitation was scaled back to two-hour visits. The agency also referred Father for a new substance use assessment. Father

completed this assessment and was again referred for intensive outpatient treatment.

{¶ 13} On May 2, 2022, the agency filed a notice of voluntary withdrawal of its April 20, 2022 motion to amend the dispositional prayer. The notice stated that the agency believed that its originally requested disposition of permanent custody to CCDCFS was in the best interest of the children.

{¶ 14} On May 12, 2022, the court held a trial on the agency's motion for permanent custody. At the outset of the hearing, Father's counsel requested a continuance, arguing that the agency's belated notice of withdrawal was based solely on positive drug screens that the agency had not turned over; counsel requested time to review the evidence and prepare a defense. The court denied this request and proceeded with trial. The sole witness was CCDCFS social worker Myrtis Rander-Walker ("Rander-Walker").

{¶ 15} Rander-Walker testified that she had been assigned to the case since August 2019. Rander-Walker testified that Mother completed substance-abuse treatment and parenting programs, but as of Mother's most recent relapse in May 2021, she had spoken to Mother on the phone twice. Beyond those calls, the agency was unable to contact or engage with Mother from May 2021 through the date of trial. Rander-Walker testified that at the time of the trial, Mother was incarcerated.

{¶ 16} With respect to Father, Rander-Walker testified that he had successfully completed his case plan goals and the agency was working towards reunification until it received two positive drug screens in April 2022. Rander-

Walker said that she spoke to Father about the positive results, and he said that he did not know "where it came from." Rander-Walker also testified that the change in substance abuse from marijuana to Fentanyl was concerning to the agency because of its particular danger to children. Rander-Walker testified that Father completed a substance abuse reassessment and, in order for the agency to consider reunification with Father, he would need to have six months of sobriety, including completion of any recommended treatment and submission of required clean drug screens.

{¶ 17} Rander-Walker also testified that the twins were in a foster placement and were doing well, noting that they had been at the placement for two years "and they consider them their parents and they feel like a family." Further, the foster parents were interested in providing permanency for the children. Finally, Rander-Walker testified that she believed it was in the children's best interest to have permanency in their life. She noted that the agency had tried to reunite them with Mother multiple times and Father once, and it was unfair to the children to "be bouncing back and forth."

{¶ 18} On June 11, 2022, the magistrate issued a decision granting the agency's motion to modify temporary custody to permanent custody. The court stated, in relevant part:

> Pursuant to R.C. 2151.414(B)(1)(d), the Court finds by clear and convincing evidence that it is in the best interest of the child to grant permanent custody to the agency that filed the motion for permanent custody and that the following apply: the child has been in the temporary custody of one or more public child services agencies or

private child placing agencies for twelve or more months of a consecutive twenty-two-month period.

[Father] completed an intensive outpatient treatment program and achieved his first clean urine in January 2022. As a result, the agency started working towards reunification including extended and overnight visits. Unfortunately, the father tested positive for fentanyl on the 18th and 28th of April 2022. The treatment provider is recommending that the father's treatment start all over, and these positive tests start the clock on the six-month period of sobriety from once the father again obtains a clean urine whenever that would be. The court further notes that the father is still on post release control and could be incarcerated on a parole violation for positive drug screens.

The foster parents are the psychological parents of these children. The GAL for the children recommends permanent custody because the children need a determination of permanency. The agency has tried multiple times since the children were born to reunify them with their parents — at least three times with the mother and after several years of agency involvement, when the father was released from prison and finally [started] working case plan services, the agency tried to reunify with him. Despite diligent efforts on the part of the agency since the children were born in 2018, the parents are still not able to be reunified. Almost four years after the children were born and removed for the first time, the mother is currently incarcerated, and the father is currently testing positive for fentanyl.

{¶ 19} Mother appeals, presenting a single assignment of error for our review:

I. The trial court's award of permanent custody to DCFS violated state law and Appellant's right to due process of the law as guaranteed by the Fourteenth Amendment of the United States Constitution and Section 16, Article I of the Ohio Constitution.

**Law and Analysis**

{¶ 20} Mother's assignment of error argues that the trial court violated Father's due process rights when it denied his motion to continue the trial in order to review the positive drug screens. Mother also argues that Father received

ineffective assistance of counsel, arguing not that Father's counsel was deficient but that counsel was "unable to perform his job competently" because the agency failed to turn over the positive drug screens prior to trial.

{¶ 21} As an initial matter, we must address the particular procedural circumstances of this appeal. Mother, who did not appear at the trial in this case because she was incarcerated, initiated this appeal and seeks to challenge the lower court's permanent custody determination because of a claimed violation of Father's due process rights. Father did not appeal from the lower court's judgment in this case, but Father has filed an appellee brief to this court in which he provides arguments in support of Mother's assignment of error. Therefore, before we address the substance of Mother's argument, we must first determine whether Mother has standing to raise this assignment of error.

{¶ 22} It is well settled that an appeal lies only on behalf of an aggrieved party. *In re J.L.*, 8th Dist. Cuyahoga No. 107652, 2019-Ohio-3098, ¶ 14, citing *In re Love*, 19 Ohio St.2d 111, 113, 249 N.E.2d 794 (1969). *See also In re D.H.*, 8th Dist. Cuyahoga No. 82533, 2003-Ohio-6478, ¶ 7. An appellant may not challenge an alleged error committed against a nonappealing party unless the appealing party can show prejudice from the alleged error. *Id.*, citing *In re M.M.*, 8th Dist. Cuyahoga No. 79947, 2002 Ohio App. LEXIS 463 (Feb. 7, 2002) (mother questioning personal jurisdiction over father could not raise issue on appeal absent prejudice).

{¶ 23} Therefore, Mother can only challenge the alleged violations of Father's due process rights if she can show that she has been prejudiced by the

alleged error. Mother fails to make this showing. Mother's brief does not point to any way in which the alleged due process violation affected the outcome of the proceedings or prejudiced her. As such, we find that Mother lacks standing to challenge the denial of Father's motion to continue. Because Mother does not have standing to challenge the denial of Father's motion to continue, we overrule her sole assignment of error.

{¶ 24} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
CORNELIUS J. O'SULLIVAN, JR., J., CONCUR