[Cite as *In re E.V.*, 2022-Ohio-4538.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: E.V., MALE INFANT G | : | APPEAL NOS. C-220429 |
| | | C-220446 |
| | : | TRIAL NO. F19-372X |
| | : | *O P I N I O N.* |

Appeals From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 16, 2022

*Cynthia S. Daugherty*, for Appellant Mother,

*Christopher P. Kapsal*, for Appellant Father,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Silvia Beck*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Emily Hughes*, Assistant Public Defender, Appellee Guardian ad Litem for the Children,

*Jacqueline Handorf-Rugani*, for Appellee Intervenors.

**ZAYAS, Presiding Judge.**

{¶1} In these consolidated appeals, appellants mother and father appeal the judgment of the Hamilton County Juvenile Court granting permanent custody of their children, E.V. and Male Infant G ("M.G."), to the Hamilton County Department of Job and Family Services ("HCJFS"). For the following reasons, we affirm the judgment of the juvenile court.

## I. Factual and Procedural History

{¶2} On March 26, 2019, HCJFS filed a complaint for temporary custody of E.V., alleging that E.V.—born January 30, 2019—tested positive for fentanyl, cocaine, and tramadol at birth, and mother admitted to using cocaine, THC, and heroin during the pregnancy. Relevant to father, the complaint asserted that mother and father had been married for three years but father resided and was employed in New York. Interim custody of E.V. was granted to HCJFS that same day. HCJFS filed the initial case plan in May 2019. The case plan indicated that E.V. was in the care of family, and that father had agreed to work toward reunification and was fully cooperating with the case-plan services. The case plan required that father sign all needed releases, participate in parenting classes and follow all recommendations, attend drug-informative programs to help father realize when mother was under the influence, and obtain housing and employment (or provide verification of employment). Visitation with the children was to occur once a week in an agency setting.

{¶3} On May 3, 2019, E.V. was adjudicated abused and dependent, and temporary custody was granted to HCJFS by agreement of the parties. Father was ordered by the court to visit regularly with E.V., demonstrate his ability to provide adequate childcare, complete parenting classes, and provide evidence of stable housing and employment. Subsequently, in July 2019, the court further ordered that

father complete an updated diagnostic assessment and comply with random drug screens as father had tested positive for cocaine through a hair-follicle test. The court's order also indicated that mother had been observed with father in his apartment. In October 2019, an entry from the court indicated that father had now twice tested positive for cocaine and had two occurrences where the testing facility was unable to obtain a sufficient hair sample for the test. The entry also indicated that, while father had reported having no contact with mother, he was observed by a private investigator having contact with mother prior to the last hearing.

{¶4} HCJFS ultimately moved for permanent custody of E.V. on February 10, 2021.

{¶5} On May 10, 2021, an emergency ex parte order was granted allowing HCJFS to take emergency custody of M.G., born April 15, 2021. HCJFS filed a complaint for temporary custody of M.G. the following day, which alleged that mother had reported no prenatal care and use of fentanyl the day prior to M.G.'s birth. The complaint also asserted that father was unaware that mother was pregnant and had tested positive for cocaine on February 1, 2021. The court granted interim custody of M.G. to HCJFS that same day. HCJFS filed an amended complaint seeking permanent custody of M.G. on May 20, 2021. An updated case plan adding M.G. was filed on June 3, 2021. The parties waived any objection as to timing for adjudication and disposition on June 4, 2021.

{¶6} M.G. was adjudicated abused and dependent on July 6, 2021. Hearings regarding permanent custody of both children were held on December 7, and December 21, 2021, and January 5, February 17, and March 4, 2022. Testimony was presented from father, two HCJFS caseworkers, father's therapist, a visitation

facilitator from the Family Nurturing Center ("FNC"), a private investigator, and a care provider of the children.

{¶7} Father testified that he was not aware of mother's "problems" when E.V. was born. He admitted to letting mother stay at his apartment sometimes when he was not home and helping mother with "food and things of that nature." He said, "I really don't see her every day. I might help her once a week, maybe once a month." When asked if he would help mother if he got custody of the children, he responded, "I don't think I will." He denied using cocaine or any other drugs. He testified that the positive test results were a surprise to him as he did not do drugs.

{¶8} An HCJFS caseworker with case responsibility from April 2019 to March 2021 testified that father complied with the case plan regarding diagnostic assessments, parenting, stable housing, and visitation, but never provided verification of employment. She said that father also completed random drug screens but the screens came back positive. Father expressed to her that the positive results could be attributed to either a prescription medication or his previous cocaine use from a long time ago. The caseworker testified that she had concerns that mother was staying at father's apartment. She said that she talked to father about his relationship with mother and that father said he was no longer in a relationship with mother but did talk to mother.

{¶9} Another HCJFS caseworker with case responsibility starting in March 2021 testified that father did ultimately provide proof of stable income that was satisfactory to the agency. However, father continued to deny drug use, despite the positive test results. Regarding father's interaction with mother, she said that father denied that mother resided in his home but stated that he sometimes lets mother stay there if mother does not have anywhere else to go or he is out of town. She testified

that the positive drugs screens and father's involvement with mother prevented the agency from believing that father could provide a safe and stable environment as it caused concern that he would not be able to protect the children. She expressed that a parent "has to demonstrate their ability to show that they can choose their children over that person." She denied that father had demonstrated this to her. She said, "I think that because he has a soft spot for mother that he would allow her access to the children."

{¶10} Father's therapist from Talbert House testified that father started therapy in October 2021 and was consistent with his sessions every two weeks. She denied knowing about father's positive drug test results and said that the referral she received did not recommend substance-abuse treatment. When asked if father would have to acknowledge drug use to be treated for substance abuse, she replied, "He has to, and he has to admit and accept the treatment too, but he wasn't referred to us for substance abuses [sic] treatment, he was referred for mental health services."

{¶11} The FNC visitation facilitator testified that father was focused on the children during visitation and made them happy while also meeting their needs. He said that the children were bonded with father. He agreed that FNC had a policy that visits could not move to in-home visits if a parent had positive drug screens.

{¶12} One of the care providers for the children testified that he and his wife were well bonded to the children, that the children were bonded to each other, and that both children were thriving in their care. He said that both children had been in their home since coming home from the hospital and they wanted to adopt the children.

{¶13} On April 19, 2022, the magistrate entered a decision granting permanent custody of the children to HCJFS. Mother and father filed objections to

the magistrate's decision. The juvenile court overruled the objections and adopted the decision of the magistrate on August 18, 2022. Mother and father now appeal.

## II. Law and Analysis

### A. Due Process

{¶14} In her first assignment of error, mother argues that the trial court "erred procedurally by denying due process when the trial court failed to swear in the interpreter during father's testimony." She supports this argument with only a conclusory assertion that the trial court "did not protect father's essential and basic civil rights and did not afford him every procedural and substantive protection allowed by law." Mother does not assert that she herself suffered any injury or prejudice as a result of the juvenile court's failure to swear in the interpreter.

{¶15} "It is well settled that an appeal lies only on behalf of an aggrieved party." *In re J.T.*, 8th Dist. Cuyahoga No. 111749, 2022-Ohio-4214, ¶ 22, citing *In re J.L.*, 8th Dist. Cuyahoga No. 107652, 2019-Ohio-3098, ¶ 14. "An appellant may not challenge an alleged error committed against a nonappealing party unless the appealing party can show prejudice from the alleged error." *Id.*, citing *In re J.L.* at ¶ 14; *see In re Z.*, 1st Dist. Hamilton No. C-190026, 2019-Ohio-1617, ¶ 27 ("[A]n appellant cannot raise issues on behalf of an aggrieved third-party, particularly when that party could have appealed the issue to protect his or her own interests.").

{¶16} While father did file an appeal in this case, he failed to raise this issue on his own behalf. Because we see no reason why father was unable to raise this issue on his own behalf and mother does not assert that she herself was in any way prejudiced by the alleged error, we hold that mother lacks standing to assert this argument. *See In re J.T.* at ¶ 22; *Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 49, 52 (finding that proof of a

6

hinderance which prevents the possessor of the right from seeking relief is a requirement for third-party standing). Therefore, we overrule mother's first assignment of error.

## B. Permanent-Custody Determination

{¶17} In mother's second assignment of error and father's sole assignment of error, each parent argues that the juvenile court's decision to grant permanent custody of the children to HCJFS was against the manifest weight of the evidence and not supported by sufficient evidence. Both parents assert that the juvenile court should have awarded custody to father.

### B1. Standard of Review

{¶18} "When reviewing a case involving the termination of parental rights, this court must look to the record and determine if the juvenile court's decision was supported by clear and convincing evidence." *In re A.W.*, 1st Dist. Hamilton No. C-220248, 2022-Ohio-3715, ¶ 19, citing *In re P. & H.*, 1st Dist. Hamilton Nos. C-190309 and C-190310, 2019-Ohio-3637, ¶ 6. " 'Clear and convincing evidence is evidence sufficient to "produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." ' " *Id.*, quoting *In re P. & H.* at ¶ 6. "We will not substitute our judgment for that of the juvenile court where some competent and credible evidence exists to support the juvenile court's decision." *Id.*, citing *In re P. & H.* at ¶ 6.

{¶19} "Our examination of the sufficiency of the evidence is a question of law which looks to adequacy of the evidence and asks whether some evidence exists on each element." *Id.* at ¶ 20, citing *In re P. & H.* at ¶ 7. "On the other hand, our examination of the weight of the evidence looks to the inclination of the greater amount of credible evidence to support one side rather than the other." *Id.*, citing

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12. "Weight of the evidence is not a question of mathematics, but rather the effect of the evidence in inducing belief." *Id.*, citing *Eastley*. "When reviewing the weight of the evidence, this court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether–in resolving the conflicts in the evidence–the juvenile court ' "clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed." ' " *Id.*, quoting *In re P. & H.* at ¶ 7. "In doing so, we must be mindful of the presumption in favor of the finder of fact." *Id.*, citing *In re A.B.*, 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247, ¶ 16.

### B2. Circumstances Authorizing Permanent Custody for Each Child

{¶20} The juvenile court granted permanent custody of E.V. to HCJFS pursuant to its authority under R.C. 2151.414(B)(1). The statute provides that, upon a motion filed pursuant to R.C. 2151.413, the juvenile court may grant permanent custody of a child to the agency if, at a hearing held pursuant to R.C. 2151.414(A), the court finds that (1) it is in the best interest of the child to grant permanent custody of the child to the agency, and (2) the child has been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d). Neither parent disputes that E.V. was in the temporary custody of the agency for 12 or more months of a consecutive 22-month period. Therefore, relevant to E.V., this court must only determine whether the juvenile court's best-interest finding was supported by the record.

{¶21} On the other hand, the juvenile court granted permanent custody of M.G. to HCJFS pursuant to its authority under R.C. 2151.353(A)(4). The statute authorizes the juvenile court to commit a child who is adjudicated abused, neglected,

8

or dependent to the permanent custody of the agency if the court determines that (1) pursuant to R.C. 2151.414(E), the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent, and (2) permanent custody is in the child's best interest under R.C. 2151.414(D)(1). R.C. 2151.353(A)(4). Both parents dispute that these standards were met regarding M.G.

### B3. R.C. 2151.414(E) Determination Regarding M.G.

{¶22} Pursuant to R.C. 2151.414(E), the juvenile court must enter a finding that a child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent if the court finds, by clear and convincing evidence, that

> [f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, **the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.**

(Emphasis added.) R.C. 2151.414(E)(1). When determining whether a parent has substantially remedied the conditions that caused a child to be removed from the home, the court must consider "parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." R.C. 2151.414(E)(1).

{¶23} Here, the issue which caused M.G.'s removal was drug use. The ongoing issues with father throughout the case have been drug use and continued interaction

9

with mother. The juvenile court found that father had engaged in some reunification services, including completion of a diagnostic assessment, visitation with the children, and completion of a parenting/education program. Additionally, the court found that father's housing was never an issue and that father did ultimately provide satisfactory proof of income, although not providing the information for well over a year. However, the court also found that father continued to test positive for cocaine throughout the case while continuing to deny any illegal drug use with no explanation for the positive results. The court found that the drug use was a barrier to reunification as father was unable to progress past supervised visits with the children and was prevented from receiving a referral for substance-abuse treatment.

{¶24} These findings are supported by the record. The record contains the results of 15 drug tests, completed between May 2019 and December 2021. Of those results, seven were positive, two were negative, two were rejected due to inadequate specimen quality (no hair), and four were no-shows. The most recent positive result was in December 2021. Additionally, both HCJFS caseworkers and the FNC visit facilitator testified that father's visitation could not progress beyond supervised visits so long as his drug tests came back positive, and father's therapist testified that acknowledgement of drug use is required before an individual can complete substance-abuse treatment.

{¶25} Father argues that, while the positive drug tests are "concerning," he was never referred for substance-abuse treatment. However, the record reflects that he was never referred for treatment because he continued to deny any drug use. Diagnostic assessments from August 2019 and October 2020 both note that no treatment was recommended for father because he denied any drug use.

10

**{¶26}** Mother argues that father completed his case-plan services. However, "the dispositive issue is not whether a parent has complied with the case plan, but whether the parent has substantially remedied the conditions that led to the children's removal." *In re R.A.D.*, 1st Dist. Hamilton Nos. C-200325, C-200326, C-200344, C-200345 and C-200346, 2021-Ohio-372, ¶ 21, citing *In re A.F.*, 1st Dist. Hamilton Nos. C-200230 and C-200231, 2020-Ohio-5069, ¶ 26. The issue which caused M.G.'s removal in this case was drug use, and father continued to test positive for cocaine throughout the pendency of this case and continued to interact with mother, who had a known issue with drug use. Therefore, we hold that the juvenile court's finding under R.C. 2151.414(E) regarding M.G. was supported by sufficient evidence and not against the manifest weight of the evidence.

### B4. Best-Interest Determination Regarding Both Children

**{¶27}** In determining the best interest of a child, the juvenile court must consider all relevant factors, including, but not limited to, (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any person who may significantly affect the child, (2) the wishes of the child, as expressed by the child or the child's guardian ad litem, (3) the custodial history of the child, (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency, and (5) whether any factor listed in R.C. 2151.414(E)(7)-(11) applies in relation to the parents and child. R.C. 2151.414(D)(1). " 'No single factor is given greater weight or heightened significance.' " *In re A.D.*, 1st Dist. Hamilton No. C-220128, 2022-Ohio-2346, ¶ 17, quoting *In re D.M.*, 1st Dist. Hamilton No. C-200043, 2020-Ohio-3273, ¶ 47.

**{¶28}** The juvenile court found that custody to HCJFS was in the best interest of the children. In doing so, the court acknowledged that the children were well bonded to father and the care providers. However, the court also recognized that neither child had ever lived in the home of either parent as each child was placed with the care providers upon discharge from the hospital at birth, and that the children needed a legally secure placement which could not be provided without a grant of permanent custody to HCJFS as neither parent was able to provide a safe, stable, and permanent home for the children. This is supported by the record.

**{¶29}** The record reflects that both children had been in the temporary custody of the agency since shortly after birth. For E.V., this meant that she was in the temporary custody of the agency for a period of more than 12 months of a consecutive 22-month period. The children were placed together in the home of the care providers, who seek to adopt them. Although complying with a number of case-plan services, father continued to test positive for cocaine throughout the pendency of the case while denying any drug use and continued to have interactions with mother who was viewed as a risk to the children due to her continued drug use. Based on this evidence, we hold that the juvenile court's best-interest finding was supported by sufficient evidence and not against the manifest weight of the evidence.

**{¶30}** Therefore, we overrule mother's second assignment of error and father's sole assignment of error.

## IV. Conclusion

**{¶31}** Having overruled each assignment of error, we affirm the judgment of the trial court.

Judgment affirmed.

**CROUSE** and **WINKLER, JJ.,** concur.

Please note:

  The court has recorded its own entry this date.