[Cite as *In re C.W.-H*, 2023-Ohio-1374.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE C.W.-H, ET AL. | : | |
| | : | No. 112170 |
| Minor Children | : | |
| | : | |
| [Appeal by Mother] | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 27, 2023

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-19914468 and AD-19914471

### *Appearances:*

Christina M. Joliat, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee*.

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Appellant-Mother ("Mother") appeals from the juvenile court's decision awarding permanent custody of her minor children, C.W.-H. and T.W.-H. ("the children"), to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency"). For the reasons that follow, we find no merit to the appeal and affirm.

## I. Procedural Background

{¶ 2} In December 2019, the agency received a referral regarding the children and two of their siblings after one of the siblings was diagnosed with abusive head trauma and exhibited signs of past abuse.[1] Mother subsequently pleaded guilty to attempted child endangerment and was sentenced to ten months in jail.

{¶ 3} On December 3, 2019, CCDCFS filed a complaint alleging that the children were abused and neglected and requesting dispositional temporary custody. Mother appeared at the adjudicatory hearing and stipulated to an amended complaint. The juvenile court adjudicated the children abused and neglected and committed them to the temporary custody of the agency. In February 2021, the juvenile court extended the temporary custody orders.

{¶ 4} On March 31, 2021, CCDCFS filed a motion to modify temporary custody to permanent custody. In May 2021, Mother filed a motion for legal custody requesting that the juvenile court award legal custody of the children to her cousin, B.T.[2]

{¶ 5} In September 2022, the juvenile court conducted a trial on all pending motions regarding all four of Mother's children. At the commencement of the trial, Mother withdrew her request for legal custody of C.W.-H. and T.W.-H.

---

[1] The siblings, A.W.-C. and A.M. are not parties to this appeal.

[2] Mother also filed separate motions requesting that the court grant legal custody of A.W.-C. and A.M. to other relatives.

because B.T. did not appear at trial. On October 20, 2022, the juvenile court issued its order terminating Mother's parental rights and granting the agency permanent custody of C.W.-H. and T.W.-H.

{¶ 6} Mother now appeals, raising two assignments of error.

## II. Motion to Continue

{¶ 7} Prior to the start of the trial, CCDCFS requested that the permanent custody trial pertaining to C.W.-H. and T.W.-H. be continued because the children's Father ("Father") had not received notice of the trial. Counsel for Father was present and advised the court that he had not had any contact with Father since December 2021. Counsel indicated that he called Father about the trial at his last known telephone number, and left a voicemail message. Counsel advised the court that it was his understanding that Father's "current situation would not lend itself to being able to care for the children at this time." (Tr. 8.) Upon further inquiry, it was determined that Father had not engaged in any services provided by the agency, had no contact with the agency or with the children, and the social worker assigned to the matter believed Father's last known address was on Mayfield Road. The children's guardian ad litem ("GAL") advised the court that going forward with the agency's motion for permanent custody was in the children's best interests. The GAL also advised the court that when he spoke with Father on May 5, 2022, Father stated that he was not in a position to care for the children. The GAL further advised that as part of Father's parole conditions, he was unable to have any unsupervised contact with his children.

{¶ 8} Counsel for Mother objected to going forward with the trial because Father had not received notice, and Mother's motion for legal custody to her cousin B.T. was pending. When the court stated that it believed that Mother withdrew that motion, counsel agreed, but then stated that he recently received information about relatives from Alabama who could be appropriate. The court expressed frustration about the timeliness of these undisclosed relatives.

{¶ 9} Mother reiterated that her objection to proceeding with trial was "due to primarily notice to father" and his right to be present. The juvenile court denied CCDCFS's request for a continuance. After discussing Mother's motions for legal custody regarding her other children, counsel for Father advised the court that he "spoke to [Father] a couple of minutes ago" and received Father's "current address * * * if the court wish[ed] to send notice to him or send the results of the hearing to him. I also discussed with him what his desires were, and he acknowledge[d that] he is not in a place to be able to care for the kids today. He would just be supporting [M]other." (Tr. 22.)

{¶ 10} The trial court then addressed the parties, stating that the next available court date would be in January 2023 and that the children had already been in the custody of the agency for more than 12 of the 22-month-period. Counsel for CCDCFS stated that without proper notice to Father, the agency could not ask the court to go forward with the trial. The court stated that the matter would be continued until January 2023. The GAL for all four of mother's children objected, stating that it was not fair to the children to continue the matter, and questioned

further whether the court would move forward with the trial regarding mother's other two children because the notice issue did not affect those children. The court agreed with the GAL regarding the children's need for stability, and decided that because the motions for permanency had been pending since March 2021, it would retract its previous decision to continue the matter and proceed with the agency's request for permanent custody regarding all four children.

{¶ 11} Mother raises as her first assignment of error that the trial court abused its discretion by granting but then denying her request for a continuance based on failed notice to the children's father.

{¶ 12} Father has not appealed the juvenile court's decision terminating his parental rights, and Mother lacks standing to assert this argument on appeal on his behalf unless she can demonstrate that she was prejudiced by Father's lack of notice. *See In re J.T.*, 8th Dist. Cuyahoga No. 111749, 2022-Ohio-4214, ¶ 22, citing *In re J.L.*, 8th Dist. Cuyahoga No. 107652, 2019-Ohio-3098, ¶ 14 (an appeal lies only on behalf of an aggrieved party; a party may not challenge an alleged error committed against a nonappealing party unless the party can show prejudice from the alleged error). Mother has not made any argument on appeal demonstrating how she was prejudiced by any deficiency in the notice sent to Father. Accordingly, Mother has failed to demonstrate that she has standing to assert this argument on Father's behalf.

{¶ 13} Moreover, notice to Father was arguably proper. "[D]ue process requires both notice and an opportunity to be heard." *In re Thompkins*, 115 Ohio

St.3d 409, 2007-Ohio-5238, 875 N.E.2d 582, ¶ 13.  Accordingly, "the government must *attempt* to provide actual notice to interested parties if it seeks to deprive them of a protected liberty or property interest. * * * but due process does not require that an interested party receive *actual* notice."  (Emphasis sic.)  *Id*. at ¶ 14.  R.C. 2151.414(A)(1) sets forth the notice requirements of a permanent custody motion and trial, and provides in relevant part that "the court shall schedule a hearing and give notice of the filing of the motion and of the hearing, in accordance with [R.C. 2151.29], to all parties to the action and to the child's guardian ad litem."

{¶ 14}  R.C. 2151.29 provides, "Service of summons, notices, and subpoenas, prescribed by [R.C. 2151.28], shall be made by delivering a copy to the person summoned, notified, or subpoenaed, or by leaving a copy at the person's usual place of residence.  If the juvenile judge is satisfied that such service is impracticable, the juvenile judge may order service by registered or certified mail."

{¶ 15}  "For proper service, the parents must be notified of the permanent custody motion and the initial permanent custody hearing by one of three methods: personal service, service by certified or registered mail * * *, or — if both those methods fail — by publication."  *In re L.H.*, 6th Dist. Lucas No. L-22-1078, 2022-Ohio-3263, ¶ 32; R.C. 2151.29; Juv.R. 16.  Additionally, counsel for the parent receives notification of the hearings as specified under Juv.R. 20.  *In re Starkey*, 150 Ohio App.3d 612, 2002-Ohio-6892, 782 N.E.2d 665, ¶ 37-39 (7th Dist.).  Juv.R. 20(B) provides, "[w]henever under these rules or by an order of the court service is required or permitted to be made upon a party represented by an attorney, the

service shall be made upon the attorney unless service is ordered by the court upon the party. Service upon the attorney or upon the party, and proof of service, shall be made in the manner provided in Civ.R. 5(B)."

{¶ 16} In this case, CCDCFS filed an instruction with the juvenile court to send all notices to Father at his last known address, which was on Mayfield Road. On May 31, 2022, notice of the permanent custody trial was sent to Father at this address. Although the notice was returned to the court "unable to forward," this court has previously considered that attempted service to a last known address may be proper when a parent also received notice through his attorney. *See In re N.J.*, 8th Dist. Cuyahoga No. 110302, 2021-Ohio-2525, ¶ 25.

{¶ 17} Father was represented by counsel, who appeared at the trial. Counsel advised the court that he had not had contact with Father since December 2021, but attempted to reach Father about the trial. Counsel relayed further that in December 2021, Father indicated that he was not in a position to care for his children. More importantly, counsel was able to communicate with Father by telephone during the trial and reiterated and confirmed counsel's previous statements regarding Father's inability to care for the children. Accordingly, the record before this court reveals that this is not a situation where Father was completely unaware of the agency's motion for permanent custody or that his rights and wishes were not expressed or represented at trial.

{¶ 18} Finally, the juvenile court's decision to deny the requests for a continuance and proceed with the permanent custody trial was not an abuse of

discretion. *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981); *Fitworks Holding, L.L.C. v. Sciranko*, 8th Dist. Cuyahoga No. 90593, 2008-Ohio-4861, ¶ 4 (denial of a continuance is a matter entrusted to the broad, sound discretion of the trial judge).

{¶ 19} Courts should consider the following objective factors when ruling on a motion for a continuance:

> the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the [requesting party] contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Unger* at 67-68. "'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'" *Unger* at 67, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964).

{¶ 20} In this, the juvenile court noted that the next available trial date was in January 2023, and that the agency's motion for permanent custody had been pending since March 2021. By the time of the trial, the children had been in agency custody for almost three years, and both the court and GAL expressed that the children needed both permanency and stability. In matters involving custody of children, courts must "be mindful of the best interests of the children and their need for stability and permanency, in considering a request for a continuance." *In re I.N.*,

8th Dist. Cuyahoga No. 110067, 2021-Ohio-1406, ¶ 16. This court finds no abuse of discretion in this case because the situations of both Mother and Father reveal that neither were in a position for the children to be placed in their care or with a legal custodian within the relevant statutory time.

{¶ 21} Mother's first assignment of error is overruled.

### III. Manifest Weight of the Evidence

{¶ 22} Mother contends in her second assignment of error that the juvenile court's order granting permanent custody to the agency was not based upon sufficient clear and convincing evidence and was against the manifest weight of the evidence and that the juvenile court erred in finding permanent custody to be in the best interest of the children when a legal custody motion to a relative was pending.

{¶ 23} Pursuant to R.C. 2151.414, a juvenile court may grant permanent custody of a child to an agency if, after a hearing, the court determines by clear and convincing evidence that one of the factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies, and that an award of permanent custody is in the child's best interest. This court will not reverse a juvenile court's award of permanent custody as being against the manifest weight of the evidence when the record contains competent, credible evidence by which the court could have found that the essential statutory elements for an award of permanent custody have been established. *In re B.P.*, 8th Dist. Cuyahoga Nos. 107732 and 107735, 2019-Ohio-2919, ¶ 22.

{¶ 24} Regarding the factors in R.C. 2151.414(B)(1), the trial court found that neither C.W.-H. nor T.W.-H. can be placed with either parent within a reasonable

period of time or should not be placed with their parents (R.C. 2151.414(B)(1)(a)), and that the children had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d).

{¶ 25} Mother does not challenge any of these findings. In fact, Mother concedes that the children should not be returned to her care and custody. At trial, counsel for mother stated, "Mother doesn't necessarily dispute that the Agency will be able to show that — that none of her children can be safely returned to — or should be returned to any of their parents today." (Tr. 27.) And counsel for Father advised the court that he was not in any position to care for the children — a fact that the children's GAL also reiterated. Accordingly, the trial court's findings that that neither C.W.-H. nor T.W.-H. can be placed with either parent within a reasonable period of time is undisputed and supported by the record.

{¶ 26} Having determined that the children could not be placed with either parent within a reasonable period or should not be placed with them, the trial court was then required to make a "best interest" determination pursuant to R.C. 2151.414(D). This determination is the focus of Mother's appeal. She contends that the children's need for a legally secure placement could have been achieved without granting permanent custody to the agency by granting legal custody to her proposed legal custodians.[3]

---

[3] Mother's arguments appear to challenge the trial court's decision regarding her other children, A.W.-C. and A.M., who are not parties to this appeal.

{¶ 27} The record before this court demonstrates that Mother withdrew her motion requesting that the trial court grant legal custody of C.W.-H. and T.W.-H. to her cousin prior to the permanent custody trial. In fact, Mother's counsel acknowledged the withdrawal of the motion, but maintained that relatives in Alabama were just recently discovered who may be interested in caring for the children. Despite this recent discovery, Mother had not filed any motions requesting legal custody to these undisclosed relatives, nor did anyone appear at the trial seeking legal custody of C.W.-H. and T.W.-H. Accordingly, because no motion was pending at trial, the juvenile court lacked authority to grant legal custody of the children to a relative.

{¶ 28} R.C. 2151.414(D) requires that in determining the best interest of the child, the court must consider all relevant factors, including but not limited to (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents, and out-of-home provides, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors in R.C. 2151.414(E)(7) through (11) are applicable. Although a trial court is required to consider each of the R.C. 2151.414(D)(1) factors in making its permanent custody determination, "there is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498,

2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. This court has stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. *In re T.B.*, 8th Dist. Cuyahoga No. 110130, 2021-Ohio-2448, ¶ 25, citing *In re Moore*, 8th Dist. Cuyahoga No. 76942, 2000 Ohio App. LEXIS 3958, 12 (Aug. 31, 2000).

{¶ 29} The juvenile court's journal entry granting permanent custody demonstrates that in making its best interest determination after hearing the evidence and testimony presented at trial, the court considered all relevant factors, including those listed in R.C. 2151.414(D)(1)-(5). The record before this court reveals that Mother had only recently started having supervised visits with the children after her release from prison. Although Mother completed her case plan prior to her incarceration, at the time of trial, additional barriers existed, including her inability to have unsupervised visits with the children, and Mother admitted she cannot reunify with the children at this time.

{¶ 30} The GAL stated that although the children wished to be reunified with their Mother, he recommended that permanent custody is in the children's best interest. According to the children's GAL, the children's considerable behavioral concerns have markedly improved since entering foster care. The children have been in agency custody since December 2019, and pursuant to R.C. 2151.415(D), the children no longer qualify for temporary custody. The GAL opined that the children's need for a legally secure placement cannot be achieved at this point without granting the agency permanent custody.

**{¶ 31}** Accordingly, this court finds that permanent custody is in the children's best interests and that the trial court's determination is supported by clear and convincing evidence. Mother's second assignment of error is overruled.

**{¶ 32}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
MARY EILEEN KILBANE, J., CONCUR